IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
    v.                           )    No.  09 C 3030
                                 )        (07 CR 632)
ALBERTO ELLIS,                   )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

Alberto Ellis has filed a 28 U.S.C. §2255 ("Section 2255") motion to vacate, set aside or correct the eight-month sentence that this Court imposed on him following his blind guilty plea to Count One of a five-count-plus-forfeiture indictment (Counts One through Four charged wire fraud, while Count Five charged Ellis with the counterfeiting and forgery of a check). This Court has conducted the initial review of Ellis' motion that is called for by Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, and this memorandum opinion and order is issued to cut Ellis' several asserted grounds for relief down to size.

Ellis seeks to bring himself within the purview of Section 2255 by advancing four contentions as to claimed violations of his constitutional rights:

   1. Ellis' attorney Patrick Blegen ("Blegen") assertedly violated Ellis' Sixth Amendment rights by "fail[ing] to apprise the defendant more fully of

immigration consequences of his guilty plea" and relatedly by "fail[ing] to take action that would have shielded his client from mandatory deportation."

    2. This Court purportedly violated Fed. R. Crim. P. 11 by "fail[ing] to inform him of possible immigration consequences."

    3. Blegen also assertedly flunked his Sixth Amendment obligations by "fail[ing] to notify the defendant of his right to contact his consulate and this violates his constitutional right under the Vienna Convention; which enables foreign nationals to receive notice of his right to contact his counsel [sic--should be 'consul']."

    4. Blegen "would not file ineffective assistance of counsel against himself."

Because the last of those four contentions is purely derivative (that is, it depends on the viability of the first or third contention, or of both), the substantive discussion here will focus only on the first three grounds.

As for Ellis' claimed first ground, it has been established law in this Circuit for fully two decades that the possibility of deportation (now referred to as removal) is a "collateral" consequence of criminal guilt that does not taint a guilty plea as involuntary and hence does not implicate the Sixth Amendment guaranty of the effective assistance of counsel. In that respect

see Santos v. Kalb, 880 F.2d 941 (7th Cir. 1989), confirming the then-recent holding in United States v. George, 869 F.2d 333 (7th Cir. 1989), and see also the unpublished order in Jimenez v. United States, 154 Fed. App'x 540 (7th Cir. 2005), which reconfirmed Santos and cited several cases from other Courts of Appeals with like holdings. So much then for Ellis' first ground, which falls of its own weight.

As for the comparable charge leveled against this Court in Ellis' second ground, to this Court's recollection it had no knowledge that Ellis was a non-citizen (indeed, it really had no occasion to harbor any suspicions or to inquire in that regard). It was not until months after Ellis entered his blind plea, when the time for sentencing him approached, that information in that respect became known to this Court.

Indeed, as the plea colloquy reflects, Ellis (then 34 years old) said that he was in college taking what the transcript refers to as a "major in ASL and business marketing" and described his most recent work experience as having served as a flight attendant for Trans Air for eight years. There were certainly no language difficulties or other indicia of his noncitizenship--it is noteworthy that the presentence investigation report prepared some months after Ellis' guilty plea (the document that first identified him to this Court as a citizen of Jamaica and a permanent resident in this country)

3

reflected that Ellis came to this country (to Miami, Florida) at the age of 13, so that he has lived in the United States for more than two decades. Ellis' previous contacts with the criminal justice system go back to 1990 in Miami, followed by a 1991 credit card violation in Matteson, Illinois. That latter violation resulted in a federal conviction on credit card fraud grounds in that same year.

What has been said up to now scotches Ellis' second ground as well. So what remains for consideration is the third ground (with its possible linkage to the fourth ground).

On that score the third ground advanced by Ellis presents quite a different picture: Last year Osagiede v. United States, 543 F.3d 399 (7th Cir. 2008)(applying the Supreme Court's recent decision in Sanchez-Llamas v. Oregon, 548 U.S. 331 (2006)) held (1) that the right of a detained foreign national to receive notice of the right to communicate with his consulate under the Vienna Convention was individually enforceable and (2) that a failure of counsel to invoke that right on behalf of a client could potentially constitute the constitutionally ineffective assistance of counsel. And that holding of course brings into play the potential applicability of Strickland v. Washington, 466 U.S. 668 (1984). As Osagiede, 543 F.3d at 408 (citations to Strickland and to Williams v. Taylor, 529 U.S. 362 (2000) omitted) explained:

> To establish an ineffective assistance of counsel
> claim, Osagiede must show that (1) his counsel's
> performance fell below an objective standard of
> reasonableness when measured against "prevailing
> professional norms," and (2) but for the deficient
> performance, there is a reasonable probability that the
> outcome of the proceeding would have been different.
> We scrutinize each claim in light of the totality of
> the circumstances, after engaging in an individualized
> fact-based analysis.

Ellis' situation differs dramatically from that of the petitioner in Osagiede--none of the cultural differences, unfamiliarity with the justice system and other factors that might make a defendant's contact with the consulate from his or her home country valuable appear to fit Ellis at all. To the contrary, it would appear likely that Ellis' long-term residency in the United States has made him pretty much the equivalent of a native son (but for the lack of a citizenship certificate). Before this Court is obligated to conduct an evidentiary hearing, then, Ellis must advance some plausible predicate for his being able to surmount the second Strickland hurdle.

Accordingly Ellis is ordered to supplement his motion on or before June 8, 2009 to provide at least a threshold showing that his being given access to the Jamaican consulate might have led to a more favorable result.[1] This Court will then determine what

---

[1] It might be added (1) that the government had Ellis dead to rights on the charges that he was facing, (2) that the United States argued forcefully that the advisory Sentencing Guidelines substantially understated his criminal responsibility and (3) that it was only because attorney Blegen obtained and provided a psychiatric report from a highly reputable

if any further proceedings are required.

                             _____
                             Milton I. Shadur
                             Senior United States District Judge

Date:  May 27, 2009

---

psychiatrist that this Court did not heed the government's urging for a stiffer sentence.  In fact, before sentencing this Court had provided the parties with a written notification that it "would think itself remiss if it did not notify the parties, as it does here, that it is giving serious consideration to the imposition of an above-Guideline range custodial sentence on defendant Alberto Ellis," even though the Supreme Court had just recently resolved a split among the Courts of Appeals around the country by confirming that no such prior notice was legally required post-Booker.